PD-1005-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 8/5/2015 11:43:34 AM
Accepted 8/6/2015 4:11:53 PM
ABEL ACOSTA
CLERK

No. _____

IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## Donna Marie Pryor

Appellant

FILED IN
COURT OF CRIMINAL APPEALS

AUGUST 6, 2015

ABEL ACOSTA, CLERK

v.

## The State of Texas

Appellee

On Appeal from the 207th District Court of Comal County in Case No. CR2012-208, the Hon. Jack Robison, Judge Presiding; and the Opinion of the Third Court of Appeals in Case No. 03-13-00347-CR, Delivered May 1, 2015.

# Petition For Discretionary Review

Submitted by:

**John G. Jasuta**
Attorney at Law
lawyer1@johngjasuta.com
State Bar Card No. 10592300

**David A. Schulman**
Attorney at Law
zdrdavida@davidschulman.com
State Bar Card No. 17833400

1801 East 51st Street, Suite 365-474
Austin, Texas 78723
Tel. 512-474-4747
Fax: 512-532-6282

Attorneys for Donna Marie Pryor

# Identity of Parties and Counsel

Pursuant to Rule 38.1(a), Rules of Appellate Procedure ("Tex.R.App.Pro."), the following is a complete list of the names and addresses of all parties to the trial court's final judgment and their counsel in the trial court, as well as appellate counsel, so the members of the Court may at once determine whether they are disqualified to serve or should recuse themselves from participating in the decision of the case and so the Clerk of the Court may properly notify the parties to the trial court's final judgment or their counsel, if any, of the judgment and all orders of the Court of Appeals.

## Appellant

Donna Marie Pryor
TDCJ No. 01859201

### Trial Counsel

**Philip A. Perez**
SBN 24048722
110 Broadway, Suite 444
San Antonio, Texas 78205

### Appellate Counsel

**David A. Schulman**
SBN 17833400
**John G. Jasuta**
SBN 10592300
1801 East 51st St., Ste 365-474
Austin, Texas 78723

## State of Texas

**Jennifer Tharp**
District Attorney
150 North Seguin St., Ste 307
New Braunfels, Texas 78130

### Trial Counsel

**Sammy McCrary**
SBN 90001990

### Appellate Counsel

**Joshua Presley**
SBN 24088254
**Clay Hearrell**
SBN 24059919

**Lisa McMinn**
State Prosecuting Attorney
SBN 13803300
Post Office Box 13046
Austin, Texas 78711

# Table of Contents

Identity of Parties and Counsel. . . . . . . . . . . . . . . . . . . . . . . .  i

Index of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Statement Regarding Oral Argument. . . . . . . . . . . . . . . . . . . .  v

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . .  v

Statement of Procedural History. . . . . . . . . . . . . . . . . . . . . .  v

Facts of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Ground for Review Restated. . . . . . . . . . . . . . . . . . . . . . . . .  2

**The Court of Appeals Erred by Conducting an Incomplete Review of the Facts and the Law**.

Relevant Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

Summary of the Argument. . . . . . . . . . . . . . . . . . . . . . . . . .  3

Arguments & Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . .  3

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

Prayer. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

Certificate of Compliance and Delivery. . . . . . . . . . . . . . . . . . . .  15

# Index of Authorities

**Texas Cases**:

*Guerrero v. State*, 305 S.W.3d 546 (Tex.Cr.App. 2009). . . . . . 7

*Jones v. State*, 493 S.W.2d 933 (Tex.Cr.App. 1973). . . . . . . 11

*Madden v. State*, 242 S.W.3d 504 (Tex.Cr.App. 2007). . . . . . . 5

*Mahaffey v. State*, 316 S.W.3d 633 (Tex.Cr.App. 2010). . . . 13

*Pryor v. State*, 03-13-00347-CR
    (Tex.App. - Austin; May 1, 2015). . . . . . . . . . . . vi, 5, 7, 8

*Robinson v. State*, 377 S.W.3d 712
    (Tex.Cr.App. 2012). . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Sharp v. State*, 495 S.W.2d 906 (Tex.Cr.App. 1973). . . . . . . 11

*State v. Duran*, 396 S.W.3d 563 (Tex.Cr.App. 2013). . . . . . . . 5

*Trahan v. State*, 16 S.W.3d 146
    (Tex.App - Beaumont 2000) . . . . . . . . . . . . . . . . . . . . 13

*Vennus v. State*, 282 S.W.3d 70 (Tex.Cr.App. 2009). . . . . . . 11


**Texas Statutes / Codes**:

    Code of Criminal Procedure

        Article 38.23. . . . . . . . . . . . . . . . . . . . . . . . . v, 11

# Index of Authorities
(CONT)

## Texas Statutes / Codes (CONT):

Penal Code

Section 49.04. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

Section 49.09(b)(2).. . . . . . . . . . . . . . . . . . . . . . . . v

Transportation Code

Section 545.104(b) . . . . . . . . . . . . . . . . . . . . . . . . 4

Rules of Appellate Procedure

Rule 38.1(a).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Rule 66.3(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## Statement Regarding Oral Argument

Because of complexity of the expert witness issue involved, the undersigned believe that oral argument will benefit the parties and assist the Court. Appellant therefore requests the opportunity to present oral argument in this case.

## Statement of the Case

This case involves the question of what constitutes a "factual dispute" withing the meaning of Article 38.23, C.Cr.P., and when a trial court is required to instruct the jury pursuant to that article.

## Statement of Procedural History

A jury found Appellant guilty of driving while intoxicated with two previous similar convictions, a third-degree felony under Penal Code §§ 49.04 and 49.09(b)(2). After finding that Appellant had previously been convicted of three additional felonies, the jury assessed punishment at 99 years' imprisonment, and the trial court rendered judgment on the jury's verdict. Notice of Appeal was timely given on May 15, 2013.

The Court of Appeals' opinion from which review is sought was delivered by the Third Court of Appeals in ***Pryor v. State***, 03-13-00347-CR (Tex.App. - Austin; May 1, 2015). Motion for rehearing was timely filed, but denied on July 6, 2015. This petition is timely filed if presented to the Clerk of the Court on or before August 5, 2015.

No. _____

IN THE  COURT OF CRIMINAL APPEALS OF TEXAS

## Donna Marie Pryor
Appellant

v.

## The State of Texas
Appellee

On Appeal from the 207th District Court of Comal County in Case No. CR2012-208, the Hon. Jack Robison, Judge Presiding; and the Opinion of the Third Court of Appeals in Case No. 03-13-00347-CR, Delivered May 1, 2015.

# Petition For Discretionary Review

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

COMES NOW, Donna Marie Pryor, Appellant in the above styled and numbered cause, by and through David A. Schulman and John G. Jasuta, her undersigned attorneys of record, and respectfully files her "Petition for Discretionary Review," and would show the Court as follows:

## Facts of the Case
(From the Opinion of the Court of Appeals)

At trial, a deputy with the Comal County Sheriff's Office testified concerning the traffic stop that led to Pryor's arrest. According to the deputy, he stopped Pryor after observing her make a turn without signaling for at least 100 feet before turning, a violation of law. See Tex. Transp.

1

Code § 545.104(b). The deputy further testified that he administered standardized field sobriety tests, determined that Pryor was intoxicated, and arrested her. The State also produced a video of the encounter recorded by the deputy's in-car camera, which the trial court admitted.

## Ground for Review Restated

**The Court of Appeals Erred by Conducting an Incomplete Review of the Facts and the Law.**

## Relevant Facts

Appellant was stopped and interrogated while driving. This allegedly occurred because she did not signal her intention to make a turn at least 100 feet prior to a turn she actually made (RR Vol. 3, PP. 25-26, 33-36).

Appellant did not testify at trial. A video from the deputy's in-car camera (State's Exhibit #3), however, was introduced into evidence (RR Vol. 3, P. 60). No other evidence of the traffic stop was before the jury. There were, therefore, two separate and distinct sources of information regarding whether or not Appellant violated the law such as to allow the deputy's intervention: ① the deputy's testimony, and ② State's Exhibit #3.

2

Appellant requested the jury be instructed on the law of Article 38.23, C.Cr.P., with regard to the legality of the stop. The trial court refused that request (RR Vol. 3, PP. 149-155). The lower court affirmed the conviction and the failure of the trial court to correctly charge the jury.

## Summary of the Argument

The Court of Appeals erred by avoiding the facts as shown, minimizing them and, in so doing, conducted an incomplete review of both the facts and the law, resulting in error as to both.

## Arguments & Authorities

The Court of Appeals erred in its opinion by minimizing or omitting entirely any mention of crucial evidence shown in the video recording of the traffic encounter which demonstrated the existence of a fact issue. This failure on the part of the Court below resulted in an incomplete and inadequate review of the evidence supporting the necessity for submission of the issue of the legality of the traffic stop to the jury pursuant to Article 38.23, C.Cr.P., as requested at trial, and required on appeal.

Corporal Mueck, the deputy who made the traffic stop which led to his discovery of evidence of intoxication, testified that he made the stop because Appellant had failed to signal her intention to turn from one highway to another for at least 100 feet (RR Vol. 3, PP. 2-33), a violation of section 545.104(b) of the Transportation Code.[1] As the deputy's "in-car camera" video (State's Exhibit #3) was admitted into evidence, the record contained evidence which a reasonable trier of fact could determine contradicted Mueck's testimony, and constituted evidence which would have allowed the jury to test the truthfulness and reasonableness of the deputy's assertion as to at which point Appellant activated her turn signal, and the length of travel from that point until she actually began the turn. The Court of Appeals ignored this evidence, disguising it by minimization.

Initially, the Court of Appeals recognized the issue before it. Nevertheless, it failed to recognize the difference between the cases upon which it relied and the case at bar, in which the

---

[1] "An operator intending to turn a vehicle right or left shall signal continuously for not less than the last 100 feet of movement of the vehicle before the turn."

4

reasonableness of the deputy's belief is easily ascertainable. The

Court of Appeals wrote:

> Although Pryor argues that the video raises a fact question as to whether she signaled at least 100 feet before turning, the material question is whether the deputy had reasonable suspicion that she had violated the law. See Madden, 242 S.W.3d at 516 ("The real factual issue is whether Trooper Lily reasonably believed that appellant was acting in a nervous manner, not whether the videotape shows appellant acting in a nervous manner."); see also State v. Duran, 396 S.W.3d 563, 568 (Tex. Crim. App. 2013) ("An officer must have reasonable suspicion that some crime was, or is about to be, committed before he may make a traffic stop.").

***Pryor***, slip op. at 3. In the case at bar, unlike ***Madden v. State***,

242 S.W.3d 504 (Tex.Cr.App. 2007), referred to by the court below,

the issue of whether the officer had a reasonable suspicion or

belief was easily resolved by a fair viewing of the video evidence.

The question is whether the members of the jury <u>could</u> have

believed that the turn signal was operating continuously for 100

feet prior to the Appellant actually making her intended turn.

***Madden***, 242 S.W.3d at 516; ***State v. Duran***, 396 S.W.3d 563,

568 (Tex.Cr.App. 2013).

Deputy Muck was <u>obviously</u> confused regarding the

requirements of the law during trial, as evidenced by his

announced decision to effect a traffic stop, while both he and

5

Appellant were stopped at the traffic signal. See (RR Vol. 3, PP. 150-152, 154). The fact that the vehicle moved for some distance after the change of the traffic signal and prior to making the turn was not factored into either the discussion or the decision to reject the charge. The prosecutor did not explain the markers he used to determine his opinion that, "Clearly it is not 100 feet. If you watch the video, there is . . .." (RR Vol. 3, P. 154). Nevertheless, in deciding whether the jury should have evaluated the video evidence, it should be presumed that the jury would have been correctly charged on the correct definition of "turn," including when such a "turn" is made under the law and the requirement to signal until the turn, and not the intersection.

Additionally, the lower court mis-described the video when it continued:

> Having reviewed the video, we conclude that the video does not clearly show that it was unreasonable for the deputy to suspect that Pryor had violated the law by failing to signal for at least 100 feet before turning. The video shows Pryor activate her turn signal, move forward a bit, stop at a traffic light, and then turn left. But the video does not indicate precise distances, nor does it show Pryor signaling so far in advance that it would have been unreasonable for the officer to believe she had violated the law.

6

*Pryor*, slip op. at 3-4 (footnote omitted). The phrases used by the court, "move forward a bit," and "and then turn left," are inaccurate, misleading and minimize the evidence beyond description.

The jury had two sources of information regarding whether or not Appellant violated the law such as to allow the deputy's intervention, the deputy's testimony and State's Exhibit #3, the video which the deputy's in-car camera recorded (RR Vol. 3, P. 60). That evidence must be fairly viewed both from the perspective of what the video showed and the requirements of the law, if for no other reason than to ensure due process rights to a fair appeal -- something the Court of Appeals did not do -- but should have. Due process of law is a part of the appellate process. See *Guerrero v. State*, 305 S.W.3d 546, 561 (Tex.Cr.App. 2009).

By its incomplete review of both the facts, clearly shown on the video, and the law, Appellant submits, the Court of Appeals violated Appellant's right to due process of law. It has so far departed from the accepted and usual course of judicial

7

proceedings such as to call for the exercise of this Court's power of supervision, as provided in Rule 66.3(f), Tex.R.App.Pro.

A truly fair viewing of the evidence would show that the video clearly demonstrated a factual issue which could only be resolved by interpretation of the video. There were no side-of-the-road markers showing the distances between various points but there were physical objects shown from which inferences about distances could have been drawn. The Court of Appeals' holding, however, does not discuss the presence of those markers and their potential to allow resolution of the factual issue. Instead, the Court marginalized the evidence by its dismissive language, and, in so doing, ignored its importance.

At oral argument before the Court of Appeals, both Appellant and the State utilized visual aids. Appellant offered two aerial photographs showing the intersection. They are included as Exhibits "B" and "C" in the appendix.

The Court rejected Appellant's request that it take judicial notice of the photographs. *Pryor*, slip op. at 4, FN 2. In its

8

rejection the Court described the photographs as "allegedly" showing the intersection, despite the State's failure to object to them; and despite the State's offer of a photograph of the same intersection, albeit with a distance scale included. Despite the Court of Appeals' failure to see the relevant nature of the photographs provided by Appellant, both did show precisely that which was depicted on the video, and demonstrated the reason the fact issue should have been presented to the jury as requested.

In fact, the video showed that the automobile crossed an asphalt to concrete demarcation on the pavement at the time the turn signal was turned on. Five seconds later the car stopped in front of the crosswalk area of the intersection, where it sat for twenty-seven seconds with its turn signal continuously flashing.

The distance between the pavement demarcation and the crosswalk area, as shown in the video, is an estimable distance and could easily have been three to five car lengths, a distance of thirty-five to fifty feet. The Court, however, inaccurately wrote,

"move forward a bit," in its effort to minimize the evidence. A truly fair viewing of the video, however, would have shown even more.

Such a fair viewing of the video's audio portion would reveal the deputy made his decision to stop the vehicle at the time Appellant was stopped at the traffic signal controlled intersection, some distance <u>before</u> the turn prior to which signaling is required, and at a time at which the deputy could not know whether a turn would actually be made. That the turn which was actually made could have been legally made after one additional lane from that which was made, adding yet more distance, was a fact the deputy could not foresee and did not consider, much like the fact that, had no turn been made, no violation would have occurred.

When Appellant proceeded, following the signal change to green, the video plainly showed the automobile crossing the crosswalk area, and then four lanes of traffic, three of which were on-coming, along with a center median with support poles holding

10

the Highway 281 bridge, all before she made the turn.[2] That took eight seconds of video time, yet the Court described it as, "and then turn left."

The only real question is whether there was a factual dispute. The answer to that question is "absolutely." The in-car video does nothing but demonstrate that truth, and minimizing the facts only serves to conceal it. The truth of the video was mis-described in the opinion of the court below to the extent that the requirements of the law were avoided.

It has long been the law that questions of law need not be submitted to the jury pursuant to Article 38.23, C.Cr.P. ***Sharp v. State***, 495 S.W.2d 906, 908 (Tex.Cr.App. 1973). For just as long, the law has required questions of fact to be submitted to the jury, upon the defendant's request. See ***Jones v. State***, 493 S.W.2d 933, 936 (Tex.Cr.App. 1973); see also ***Vennus v. State***, 282 S.W.3d 70, 80 (Tex.Cr.App. 2009).

---

[2] Perhaps one of the jurors would have known, or could have determined from the video evidence, that the average width of a lane on a Texas highway is twelve feet.

This Court has held:

> When evidence presented before the jury raises a question of whether the fruits of a police-initiated search or arrest were illegally obtained, "the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained."

*Robinson v. State*, 377 S.W.3d 712, 719 (Tex.Cr.App. 2012). The Court continued, stating that the defendant must show:

> (1) an issue of historical fact was raised in front of the jury; (2) the fact was contested by affirmative evidence at trial; and (3) the fact is material to the constitutional or statutory violation that the defendant has identified as rendering the particular evidence inadmissible.

*Robinson*, 377 S.W.3d at 719. "[T]he terms of the statute are mandatory, and the jury must be instructed accordingly." *Robinson*, 377 S.W.3d at 719.

The issue of whether or not Appellant's turn signal was continuously activated for 100 feet prior to beginning the legal turn she actually made was squarely raised by the evidence presented to the jury. That jury could consider the reasonableness of the deputy's view of the physical landmarks and

the distances involved as applied to the law of turning,[3] both by the opinion testimony of the deputy, and by the empirical evidence represented by State's Exhibit #3, the video of the incident.

The lower court's inadequate and incomplete review of the video evidence does not change the fact that the jury could have easily disagreed with the deputy's perception. That court's inadequate viewing and description of the video evidence led to a misapplication of the law requiring submission of such factual disputes to the jury as set out in ***Robinson***, *supra,* and requires review.

## Conclusion

Every fact before the jury relating to the reasonableness of the deputy's decision that Appellant had, or was about to, violate the law, was on the video. The Court of Appeals' efforts to minimize that evidence through the use of marginalizing phraseology led the

---

[3] "Turn" has been defined by this Court as meaning "to change directions", in ***Mahaffey v. State***, 316 S.W.3d 633 (Tex.Cr.App. 2010), while it has been held that a ninety degree turn was the type of turn envisioned by the applicable statute. ***Trahan v. State***, 16 S.W.3d 146 (Tex.App - Beaumont 2000). These holdings are consistent with section 545.101(b) of the Transportation Code.

lower court into error. This error requires discretionary review and, ultimately, a new trial be granted.

## Prayer

WHEREFORE, PREMISES CONSIDERED, Donna Marie Pryor, Appellant in the above styled and numbered cause respectfully prays that the Court will consider and grant her petition for discretionary review and, upon submission of the case, will vacate the decision of the Court of Appeals and remand the case to the trial court for a new trial.

Respectfully submitted,

**John G. Jasuta**
Attorney at Law
lawyer1@johngjasuta.com

State Bar No. 10592300

**David A. Schulman**
Attorney at Law
zdrdavida@davidschulman.com

State Bar Card No. 17833400

1801 East 51st Street, Suite 365-474
Austin, Texas 78723
Tel. 512-474-4747
Fax: 512-532-6282

Attorneys for Donna Marie Pryor

14

## Certificate of Compliance and Delivery

This is to certify that: (1) this document, created using WordPerfect™ X7 software, contains 2,626 words, excluding those items permitted by Rule 9.4 (i)(1), Tex.R.App.Pro., and complies with Rules 9.4 (i)(2)(B) and 9.4 (i)(3), Tex.R.App.Pro.; and (2) on XXXX, a true and correct copy of the above and foregoing "Petition for Discretionary Review" was transmitted via the eService function on the State's eFiling portal, to Joshua Presley (preslj@co.comal.tx.us) and Clayten Hearrell (hearrc@co.comal.tx.us), counsel of record for the State of Texas, and to Lisa McMinn, the State's Prosecuting Attorney (lisa.mcminn@spa.state.tx.us).

_____
**John G. Jasuta**

15

# Exhibit "A"

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
### NO. 03-13-00347-CR
---

**Donna Marie Pryor, Appellant**

**v.**

**The State of Texas, Appellee**

---
### FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT
### NO. CR2012-208, HONORABLE JACK ROBISON, JUDGE PRESIDING
---

## M E M O R A N D U M   O P I N I O N

A jury found appellant Donna Marie Pryor guilty of driving while intoxicated with two previous similar convictions, a third-degree felony. *See* Tex. Penal Code §§ 49.04, .09(b)(2). After finding that Pryor had previously been convicted of three additional felonies, the jury assessed punishment at 99 years' imprisonment, and the trial court rendered judgment on the jury's verdict. *See id.* § 12.42(d). In her first point of error, Pryor contends that the trial court erred by failing to submit a jury instruction pursuant to Texas Code of Criminal Procedure article 38.23. In her second point of error, Pryor argues that the trial court erred by overruling her objections to portions of the State's closing argument. We will affirm the trial court's judgment of conviction.

**DISCUSSION**

*Article 38.23*

At trial, a deputy with the Comal County Sheriff's Office testified concerning the traffic stop that led to Pryor's arrest. According to the deputy, he stopped Pryor after observing her make a turn without signaling for at least 100 feet before turning, a violation of law. *See* Tex. Transp. Code § 545.104(b). The deputy further testified that he administered standardized field sobriety tests, determined that Pryor was intoxicated, and arrested her. The State also produced a video of the encounter recorded by the deputy's in-car camera, which the trial court admitted.

At the charge conference, Pryor requested that the trial court submit an instruction to the jury pursuant to article 38.23, which states,

> No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.
>
> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

Tex. Code Crim. Proc. art. 38.23(a). The trial court denied Pryor's request.

In her first point of error, Pryor contends that the trial court erred by denying her request for an instruction under article 38.23 because the State's video was evidence that would have allowed the jury to determine, contrary to the deputy's testimony, that Pryor did not violate the law by failing to signal at least 100 feet before turning. We understand Pryor to be arguing

2

that if she did not violate the law, then it was illegal for the officer to pull her over. If the traffic stop was illegal, article 38.23 would have required the jury to disregard all of the evidence of Pryor's intoxication gathered after the stop. And if that evidence had been excluded, there would be insufficient evidence to support her conviction.

A defendant must meet three requirements for the trial court to submit an instruction pursuant to article 38.23: "(1) the evidence heard by the jury must raise an issue of fact; (2) the evidence on that fact must be affirmatively contested; and (3) the contested factual issue must be material to the lawfulness of the challenged conduct." *Oursbourn v. State*, 259 S.W.3d 159, 177 (Tex. Crim. App. 2008) (citing *Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007)). Here, the only two pieces of evidence relevant to Pryor's alleged failure to properly signal were the deputy's testimony and the video. *See id.* ("This factual dispute can be raised only by affirmative evidence, not by mere cross-examination questions or argument."). Thus, the issue before this Court is whether the trial court erred in concluding that the video did not affirmatively contest the deputy's testimony concerning Pryor's alleged failure to properly signal as it relates to the lawfulness of the traffic stop.

Although Pryor argues that the video raises a fact question as to whether she signaled at least 100 feet before turning, the material question is whether the deputy had reasonable suspicion that she had violated the law. *See Madden*, 242 S.W.3d at 516 ("The real factual issue is whether Trooper Lily reasonably believed that appellant was acting in a nervous manner, not whether the videotape *shows* appellant acting in a nervous manner."); *see also State v. Duran*, 396 S.W.3d 563, 568 (Tex. Crim. App. 2013) ("An officer must have reasonable suspicion that some crime was, or is about to be, committed before he may make a traffic stop."). Having reviewed the video, we

3

conclude that the video does not clearly show that it was unreasonable for the deputy to suspect that Pryor had violated the law by failing to signal for at least 100 feet before turning.[1] The video shows Pryor activate her turn signal, move forward a bit, stop at a traffic light, and then turn left. But the video does not indicate precise distances, nor does it show Pryor signaling so far in advance that it would have been unreasonable for the officer to believe she had violated the law. Therefore, Pryor has not demonstrated that evidence presented at trial affirmatively contested the deputy's testimony. As a result, the trial court did not err in not submitting an instruction under article 38.23. Accordingly, we overrule Pryor's first point of error.[2]

### Jury argument

In her second point of error, Pryor argues that certain comments the prosecutor made during closing argument at the punishment phase of trial were improper because they encouraged the jury to consider parole law in calculating Pryor's sentence.

---

[1] This case is distinguishable from *Mills v. State*, in which this Court held that the district court erred in refusing the defendant's request for an instruction under article 38.23. *See Mills v. State*, 296 S.W.3d 843, 848–49 (Tex. App.—Austin 2009, pet. ref'd). In *Mills*, unlike in this case, the officer who testified that the defendant failed to signal for at least 100 feet before the turn acknowledged on cross-examination that obstacles may have obstructed his view. *See id.* at 847–48. This Court concluded that the officer's testimony, combined with video evidence, raised a material question of fact. *See id.* at 848. Here, however, there was no such equivocation in the officer's testimony.

[2] Pending before this Court is Pryor's motion requesting that we take judicial notice of an aerial photograph allegedly depicting the intersection at issue in this case. We conclude that this photograph is not relevant to a determination of whether the evidence admitted at trial raised a fact question concerning reasonable suspicion. Accordingly, we deny the motion. *See Watkins v. State*, 245 S.W.3d 444, 456 (Tex. Crim. App. 2008) ("[T]he question of whether an appellate court should take judicial notice of an adjudicative fact when the underlying data or materials in support of that notice are presented for the first time in that court should be a matter of the appellate court's discretion, never mandatory.").

During the State's closing argument, the following exchange occurred:

[Prosecutor:] If you look—so to explain how that works, if you sentence the defendant to 1000 years, a quarter of 1000 years is 250. 15 is less. So if you give somebody 1000 years, 15 years you can get paroled. If you give somebody life, 15 years they can get parole.

And I think that's important for you to know because if it really meant life, maybe that would seem harsh, but it ain't what it means. If you don't believe it, you heard the parole officer here testify she was able to parole in six years on—

[Defense counsel:] Objection; improper argument, Judge.

[Trial court:] Overruled, Counsel.

[Prosecutor:] She was eligible for parole in eight months on a six year sentence. That's how fast you can turn somebody out on this kind of thing.

Part of that is the fact that the law also provides that you can get good conduct time on that sentence. So for every day that you are in, they can give you a day of good conduct. So it isn't 15 years, it is seven and a half, because once you get an extra day for every day you are in, it cuts it in half. So a life sentence, seven and a half years you can get out.

And what that tells you at the end of the day—

[Defense counsel:] Objection, improper argument, Your Honor.

[Trial court:] Overruled.

*****

[Prosecutor:] Giving somebody a life sentence, they can be back out on the road in about seven and a half years. And the other thing you need to know is that all the time somebody is in jail prior to this day they get credit for it, so that comes off the seven and a half years.

So I know when I talked the other day in voir dire, some people thought it sounded harsh, the range of punishment. That's their right to feel that way, but at the end of the day it doesn't mean that.

5

In Texas we like to talk tough on crime and every two years the legislature meets and they make up a first degree felony and talk about how they get life imprisonment—

[Defense counsel:]  Objection; improper argument, Your Honor.

[Trial court:]  Overruled.

[Prosecutor:]  They get their name in the newspaper.  What they don't tell you is they create parole boards that create all these fancy parole laws.  My wife calls it dog years.  Basically what it is.

It is a sad commentary on our system that we set it up in such a way, because it doesn't mean what it tells you.

We review a trial court's ruling on an objection to improper jury argument for an abuse of discretion. *Nzewi v. State*, 359 S.W.3d 829, 841 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd) (citing *Davis v. State*, 329 S.W.3d 798, 825 (Tex. Crim. App. 2010)).  A trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to any guiding rules and principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App.1990).  "[P]roper jury argument generally falls within one of four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement." *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008).

As required by statute, the trial court instructed the jury that it could "consider the existence of the parole law and good conduct time" but could not "consider the manner in which the parole law may be applied to this particular defendant." *See* Tex. Code Crim. Proc. art. 37.07, § 4(b).[3]

---

[3] Article 37.07, section 4(b) governed the jury charge in this case because the offense was punishable under the habitual offender provision of the penal code because two prior sequential felony convictions were alleged for enhancement under Texas Penal Code section 12.42(d).

We have interpreted these instructions to allow the jury to consider the defendant's eligibility for parole but not whether or when the defendant will actually be released on parole. *Branch v. State*, 335 S.W.3d 893, 907 (Tex. App.—Austin 2011, pet. ref'd) ("Branch contends that the prosecutor's statements were improper. We agree . . . . Here, the prosecutor did not state that Branch would be *eligible* for parole in a certain number of years, but rather stated that Branch would be *out of prison* in that amount of time."); *see Taylor v. State*, 233 S.W.3d 356, 360 (Tex. Crim. App. 2007) (Womack, J., concurring) ("'[T]he jury may base its assessment of punishment in part on consideration of a sentenced defendant's parole eligibility under the formula contained in the instruction; however, a jury may not base its assessment of punishment on speculation as to when, if ever, the defendant may be released on parole after becoming eligible for parole.'") (quoting *Byrd v. State*, 192 S.W.3d 69, 77 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (Frost, J., concurring)); *Waters v. State*, 330 S.W.3d 368, 373–74 (Tex. App.—Fort Worth 2010, pet. ref'd) (adopting Judge Womack's concurrence). A prosecutor may properly discuss parole eligibility during jury argument as long as he or she is merely explaining and clarifying the jury charge. *See Taylor*, 233 S.W.3d at 359; *Branch*, 335 S.W.3d at 907 (noting that "the State may attempt to clarify the meaning of the jury instructions pertaining to parole law and good-conduct time"); *see also Hawkins v. State*, 135 S.W.3d 72, 84 (Tex. Crim. App. 2004) ("It was not improper for the prosecutor to accurately restate the law given in the jury charge nor was it improper for the prosecutor to ask the jury to take the existence of that law into account when assessing punishment.").

We conclude that the prosecutor's argument was improper because it went beyond merely explaining the jury charge and instead urged the jury to consider when Pryor might actually

be released on parole.  *See Hardin v. State*, No. 03-14-00236-CR, 2015 WL 1514483, at *3 (Tex. App.—Austin Mar. 25, 2015, no. pet. h.) ("Here, the prosecutor implicitly asked the jury to consider not only when Hardin would become *eligible* for parole but also when Hardin might *actually be released* on parole.") (citing *Branch*, 335 S.W.3d at 907).  The prosecutor argued to the jury, "[Y]ou heard the parole officer here testify [Pryor] was able to parole in six years . . . ."  A prosecutor may not use evidence of a defendant's prior release on parole to argue that the defendant would actually be paroled before she had served the entire sentence assessed by the jury.  *See id.*; *see also Clark v. State*, 643 S.W.2d 723, 725 (Tex. Crim. App. 1982) ("Although the State is correct in noting that the prison records were in evidence, the records were introduced solely for the purpose of establishing appellant's prior record.  The records were not and could not be introduced for the purpose of showing the jury how the parole laws operate . . . .")  Moreover, although the prosecutor never unequivocally assured the jury that Pryor would be released before serving her entire sentence, the prosecutor did use language that was filled with certainty and was not in tune with the trial court's instruction that "[i]t cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if sentenced to a term of imprisonment."  *See* Tex. Code Crim. Proc. art. 37.07 § 4(b).  For example, the prosecutor stated, "So it isn't 15 years, it is seven and a half, because once you get an extra day for every day you are in, it cuts it in half.  So a life sentence, seven and a half years you can get out."  The prosecutor also stated, "Giving somebody a life sentence, they can be back out on the road in about seven and a half years."  On several occasions, the prosecutor stated or implied that the sentence assessed by the jury would not be the sentence that Pryor actually served.  Such argument is improper.

8

Having concluded that the prosecutor's comments were improper, we now consider whether those comments constitute reversible error. Pryor argues that we should apply the harm analysis from *Almanza v. State*, in which the degree of harm required for reversal depends on whether the appellant preserved error. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). However, *Almanza* applies when reviewing errors in the jury charge, not errors regarding jury argument. *See Kuhn v. State*, 393 S.W.3d 519, 524 (Tex. App.—Austin 2013, pet. ref'd) ("We review claims of jury charge error under the two-pronged test set out in *Almanza* . . . ."); *Vitello v. State*, No. 01-03-00669-CR, 2004 WL 1119948, at *5 (Tex. App.—Houston [1st Dist.] May 20, 2004, pet. ref'd) (mem. op., not designated for publication) ("*Almanza* has not been extended to claims of jury-argument error."). Contrary to Pryor's assertions, the improper use of parole law during jury argument is non-constitutional error that "must be disregarded" if it "does not affect substantial rights." Tex. R. App. P. 44.2(b); *Perez v. State*, 994 S.W.2d 233, 237 (Tex. App.—Waco 1999, no pet.); *see Martinez v. State*, 17 S.W.3d 677, 692 (Tex. Crim. App. 2000) ("[M]ost comments that fall outside the areas of permissible argument will be considered to be error of the nonconstitutional variety."). To determine whether the defendant's substantial rights were affected, "[w]e balance three factors: (1) the severity of the misconduct (prejudicial effect), (2) curative measures, and (3) the certainty of the punishment assessed absent the misconduct (likelihood of the same punishment being assessed)." *Hawkins*, 135 S.W.3d at 77; *see also Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (listing three harm-analysis factors); *Perez*, 994 S.W.2d at 237–38 (applying *Mosley* factors).

We conclude that the error the trial court committed in overruling Pryor's objections did not affect Pryor's substantial rights. Under the first *Mosley* factor, the severity of the misconduct,

9

we note that the prosecutor's discussion of parole was both extended and vitriolic. The prosecutor insulted the Texas Legislature and criticized the State's criminal justice system for saying one thing but meaning another when addressing being "tough on crime." The clear implication was that the jury's only hope of preventing a flawed system from releasing Pryor in a mere seven-and-a-half years was to assess the maximum sentence (as, indeed, the jury did in this case). This factor weighs in favor of a finding of harm.

Under the second factor, curative measures, the trial court overruled Pryor's objections and gave no limiting instruction to the jury. The only curative measure appearing in the record was the trial court's instructions to the jury on punishment, which accurately quoted the language on parole law mandated by Texas Code of Criminal Procedure article 37.07, section 4(b). We generally presume that a jury will follow the trial court's instructions. *Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009).

We determine that the third factor, the certainty of the punishment assessed, is dispositive in this case. The State introduced evidence that Pryor had previously been convicted at least five times for DWI. In addition, there was evidence that Pryor's driving on the occasion under consideration was so dangerous that a concerned citizen had reported her to law enforcement. Moreover, Pryor's own father testified at the punishment phase of trial that Pryor has struggled with alcohol for many years and that "[i]t is a lifetime struggle." He also testified that he has tried everything he could to get her to quit drinking and driving and that it has not worked. Pryor's father additionally testified that he was worried that his daughter would eventually kill herself while driving drunk and that on a prior occasion she ran off into a ditch because she was driving while intoxicated.

10

Finally, the State presented evidence that Pryor was required to have an interlock device on her vehicle as a condition of parole in a previous DWI case and that the condition was still in effect when she was arrested for the offense in this case. In light of all of this uncontroverted evidence, the jury would likely have concluded that Pryor is unable or unwilling to change her behavior and assessed the maximum sentence, even without the prosecutor's comments on parole law.

Balancing these three factors, we conclude that the trial court's decision to overrule Pryor's objections to the prosecutor's comments did not affect Pryor's substantial rights. We therefore overrule Pryor's second point of error.

## CONCLUSION

Having overruled both of Pryor's points of error, we affirm the judgment of conviction.

_____

Scott K. Field, Justice

Before Justices Puryear, Goodwin, and Field

Affirmed

Filed:  May 1, 2015

Do Not Publish

11

# Exhibit "B"

# January 29, 2010



# Exhibit "C"

# April 21, 2012

