# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00332-CR

**Robert Paul Mills, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF CALDWELL COUNTY, 421ST JUDICIAL DISTRICT
### NO. 2007-364, HONORABLE JACK H. ROBISON, JUDGE PRESIDING

## O P I N I O N

During the late evening hours of July 2, 2007, Officer Alex Sherwood, then of the Lockhart Police Department,[1] initiated a traffic stop on Robert Paul Mills after, Sherwood testified, he witnessed Mills making a right turn after Mills had failed to signal within one-hundred feet of the intersection. *See* Tex. Transp. Code Ann. § 545.104(b) (West 1999) ("An operator intending to turn a vehicle right or left shall signal continuously for not less than the last 100 feet of movement of the vehicle before the turn."). The investigatory detention led to a succession of incriminating discoveries by Officer Sherwood and his colleagues—weapons, outstanding out-of-state warrants, and a baggie containing .78 ounces of cocaine—and Mills's arrest. Mills was indicted and, based on the evidence obtained during the traffic stop, convicted for the offense of possession of a controlled substance, cocaine, in an amount less than one gram. *See* Tex. Health & Safety Code

---

[1] By time of trial, Sherwood was employed by a different law-enforcement agency.

Ann. § 481.002(38) (West Supp. 2008), § 481.115(b) (West 2003). Punishment was assessed at two years' confinement in state jail, probated for a period of five years, and a $500 fine.

On appeal, Mills seeks reversal of his conviction and a new trial. He brings three issues. In his first issue, Mills complains of the district court's refusal of his request for a jury instruction under article 38.23(a) of the code of criminal procedure. *See* Tex. Code Crim. Proc. Ann. art. 38.23(a) (West 2005); *Madden v. State*, 242 S.W.3d 504, 509-11 (Tex. Crim. App. 2007). Relatedly, Mills complains of the district court's exclusion of expert testimony going to whether it was physically possible for Officer Sherwood, from his vantage point, to have seen whether or not Mills had signaled within one-hundred feet of the intersection. In his second issue, Mills challenges whether the State could have relied on the out-of-state warrants as a basis for arresting Mills. In his third issue, Mills complains that the district court erred "by demonstrating open and continuous hostility towards defense counsel both in front of and outside the presence of the jury, reflecting a bias in favor of the State." Because we conclude that the evidence raised a material fact issue that required an article 38.23(a) jury instruction, we will reverse the judgment of conviction and remand this cause for a new trial.

Evidence obtained in violation of the federal or state constitutions or laws is not admissible in evidence against the accused in a criminal case. *See Mapp v. Ohio*, 367 U.S. 643, 655 (1961); *Miles v. State*, 241 S.W.3d 28, 33-34 (Tex. Crim. App. 2007); *Pierce v. State*, 32 S.W.3d 247, 253 (Tex. Crim. App. 2000); Tex. Code Crim. Proc. Ann. art. 38.23(a). Mills was convicted based on the evidentiary "fruit" of Officer Sherwood's traffic stop. *See Wong Sun v. United States*, 371 U.S. 471 (1963); *State v. Iduarte*, 268 S.W.3d 544, 550-51 (Tex. Crim. App. 2008). For an

2

investigative detention like Officer Sherwood's traffic stop to be justified under the federal and state constitutions, an officer must have specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 21 (1968); *Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007). Whether such "reasonable suspicion" is present is determined under an objective standard: whether the facts available to the officer "would warrant a reasonably cautious person to believe that the action taken was appropriate." *Griffin v. State*, 215 S.W.3d 403, 409 (Tex. Crim. App. 2006) (citing *Terry*, 392 U.S. at 21-22; *O'Hara v. State*, 27 S.W.3d 548, 551 (Tex. Crim. App. 2000)). The facts must amount to more than a mere hunch or suspicion. *Terry*, 392 U.S. at 22; *Brother v. State*, 166 S.W.3d 255, 257 (Tex. Crim. App. 2005).

Whether reasonable suspicion is present is a question of law for the trial court when there is no dispute concerning the existence of the underlying historical facts from which that determination is made. *See Madden*, 242 S.W.3d at 510-12. However, if there is a genuine dispute about the existence of one or more of these historical facts and such a fact's existence is material to the stop's legality, article 38.23(a) entitles the defendant to have the fact's existence determined by the jury through the submission of an instruction to disregard any evidence "if it believes, or has a reasonable doubt" as to whether it was obtained in violation of federal or state constitutions and laws. Tex. Code Crim. Proc. Ann. art. 38.23(a); *cf. Madden*, 242 S.W.3d at 510-13 (emphasizing that defendant is not entitled to instruction if either "there is no disputed factual issue" or fact,

3

though disputed, is immaterial because "other facts, not in dispute, are sufficient to support the lawfulness of the challenged conduct").

At trial, Officer Sherwood testified that, as he was driving north on Colorado Street (U.S. 183) in Lockhart, he saw Mills driving westward on East Market Street—moving right-to-left, from Sherwood's perspective—and approaching that street's intersection with Colorado/183.[2] Mills, according to Sherwood, stopped at a stop sign at the intersection, then turned right or north onto Colorado/183. Sherwood acknowledged that Mills did signal before turning, but testified he saw this occur only "[o]nce [Mills] got to the intersection," "[w]hen he came to a stop," and not before Mills had come within one-hundred feet of the intersection. After Mills turned right or northward onto Colorado/183, Sherwood pulled him over. Although not dispositive, we note that Sherwood candidly acknowledged that, once he saw Mills, he "was looking for probable cause for a stop because [Mills] was coming from a drug—high drug activity area."

It is undisputed that, because Sherwood was approaching from the south or Mills's left, Mills's right-turn signal was positioned on the north side of his vehicle—the opposite or "far" side of the vehicle from Sherwood's view. There is also no dispute that it was late at night and that Mills was driving a low-to-the-ground Camaro. The relative positions of the two vehicles and Mills's turn indicator are further confirmed by the video recording from Officer Sherwood's patrol car camera, which was in evidence and played for the jury.

---

[2] Market Street continues westward across Colorado/183 into downtown Lockhart. One block west of Colorado/183, Market Street runs along the south boundary of the Caldwell County courthouse lawn.

The video further reveals that the block immediately south of Market Street and east of Colorado/183—which from Sherwood's path, he would have had to look through or over to see Mills approaching on Market Street—contained various potential obstacles to Sherwood's line of sight. The block contains a Walgreens, which is dark. Surrounding the outer perimeter on the block is a chain-link fence. In the northwest corner of the block, near the Market Street—Colorado/183 intersection, is a large rectangular form that appears to be a portable building or trailer. On the videotape, this building or trailer blocks one's view of Market Street behind it until the patrol car passes to the left of the building and almost immediately turns right onto Market Street. On the videotape, Mills's car appears to come into view when Sherwood passes the portable building and immediately turns right. At that juncture, one can see the blinking illumination from Mills's right turn indicator. The video then reflects Sherwood making a u-turn to head west on Market Street, then a right turn onto Colorado/183, where he pursues Mills and pulls him over.

Contending that the evidence raised a fact issue as to whether it was physically possible for Officer Sherwood to have witnessed whether or not Mills had signaled within one-hundred feet of the intersection, Mills requested an article 38.23(a) jury instruction. Mills also sought to introduce expert testimony from Joe Martinez, a retired peace officer and licensed private investigator. Martinez was prepared to testify that he had made calculations based on his review of the video and measurements he made at the scene and determined that it had been physically impossible for Officer Sherwood to have seen whether or not Mills signaled within one-hundred feet of the intersection. The district court excluded Martinez's testimony, however, based

5

on Mills's failure to disclose Martinez as an expert as required by a discovery order. *See* Tex. Code Crim. Proc. Ann. art. 39.14(b) (West Supp. 2008).

On appeal, Mills devotes much of his briefing to debating the legal standards that govern exclusion of defense experts (as opposed to State experts) for failure to disclose them as required by a discovery order. *See Johnson v. State*, 233 S.W.3d 109, 114 (Tex. App.—Houston [14th Dist.] 2007, no pet.); *Strawn v. State*, No. 02-02-00170-CR, 2003 Tex. App. LEXIS 4571, at *7-12 (Tex. App.—Fort Worth May 29, 2003, pet. denied) (mem. op., not designated for publication) (per curiam). We need not reach that question because we conclude that the above evidence, even without Martinez's testimony, presents a fact issue regarding whether it was physically possible for Officer Sherwood to have ascertained whether Mills had or had not signaled within one-hundred feet of the intersection and whether, as Sherwood claimed, he had witnessed or had any reason to suspect that Mills committed the alleged violation.

The State has suggested that there is no factual dispute warranting an article 38.23(a) instruction because Officer Sherwood insisted that he was able to see Mills despite any obstacles and that his patrol-car video did not fully capture the range of his peripheral vision as he approached the intersection. *See Madden*, 242 S.W.3d at 513-14 (explaining that "[t]o raise a disputed fact issue warranting an Article 38.23(a) jury instruction, there must be some affirmative evidence that puts the existence of that fact into question" and that "a cross-examiner's questions do not create a conflict in the evidence, although the witnesses's answers to those questions might"). However, Officer Sherwood acknowledged the existence of facts that could give rise to the reasonable inference that he could not possibly have seen whether or not Mills had committed the

6

traffic violation. On cross, defense counsel elicited the following testimony from Sherwood about his vehicle's location relative to the location of Mills's vehicle and obstacles that could have blocked Sherwood's line of sight:

Q: And in that [Walgreens] parking lot there was a lot of construction going on, correct?

A: Correct.

Q: All right. And it had a chain-link fence all the way around—

A: Correct.

Q: —the parking lot, correct?

A: Uh-huh.

Q: You have to answer yes or no.

A: Correct.

Q: All right. And then there was the building, the Walgreens building, that was in the parking lot, correct?

A: Correct.

Q: And then there was another metal building or some kind of building that was on the corner of the intersection that Mr. Mills was stopped at, is that correct?

A: Correct.

. . . .

Q: All right. And from that corner of the Walgreens parking lot, to the intersection where Mr. Mills is, what is the distance?

A: I would probably say 200 feet.

Q: Would it surprise you if the distance was, in fact, 325 feet?

7

A:   No, it won't.

Q:   All right. And so in order for you to have witnessed Mr. Mills, you would have been looking at him at that time diagonal. It wouldn't have been a straight, down the street, but it would have been diagonal to the street that runs perpendicular that Mr. Mills was on, correct?

A:   That's correct.

. . . .

Q:   All right. Now, this is at 10:00 o'clock at night, correct?

A:   I believe so.

Q:   And Mr. Mills is driving a Camaro, correct?

A:   That's correct.

Q:   And approximately how far from the ground were his blinkers, if you know?

A:   I don't know.

Q:   Okay. It wouldn't have been more than a couple of feet, right?

A:   No.

Q:   So they were low to the ground and he was turning to the right. So the blinker would have been on the right side of the vehicle, correct?

A:   That's correct.

Q:   And you were approaching from the left side, correct?

A:   Correct.

. . . .

Q:   Okay. And he had just turned from the road behind the Walgreens, correct?

A:   Correct.

8

Q:     Okay. And could you see that?

A:     Him turning?

Q:     Uh-huh.

A:     I can't recollect.

As noted, it is undisputed that Mills had his right turn signal on when he was at the intersection, before he turned right. Sherwood's testimony and the video are affirmative evidence capable of supporting the inference that Sherwood could not have seen—and did not see—whether or not Mills had activated his turn signal within one-hundred feet of the intersection. *See id*. at 511. This disputed fact issue, in turn, is material to the lawfulness of the traffic stop and, consequently, whether the evidentiary fruits of that stop were properly admitted. The sole articulable fact that Officer Sherwood identified as the basis for his stop was the traffic violation he claimed to have witnessed. If, contrary to Officer Sherwood's testimony, he physically could not have seen whether Mills had or had not signaled within the one-hundred feet before the intersection, he would, without more, have had no more than a hunch or suspicion that Mills committed the traffic violation—not reasonable suspicion. *Terry*, 392 U.S. at 22; *Brother*, 166 S.W.3d at 257. The State points to no other facts that could give rise to reasonable suspicion for the stop. *See Madden*, 242 S.W.3d at 511.[3]

---

[3]  The State does argue that the issue of an article 38.23(a) instruction was rendered "moot" by Mills's admission, after he was stopped, that he had failed to signal within the required distance of the intersection. Sherwood testified that, when he informed Mills about the reason for the stop, Mills told him, "You got me. I did not signal." Also, an admission of the violation by Mills can be heard on the videotape, although not in those exact words. In the State's view, there is no disputed fact issue warranting an article 38.23 instruction because there was no dispute about

9

On this record, the district court erred in refusing Mills's request for an article 38.23(a) instruction. *See id*. at 510 ("The terms of the statute are mandatory, and when an issue of fact is raised, a defendant has a statutory right to have the jury charged accordingly.") (quoting *Murphy v. State*, 640 S.W.2d 297, 299 (Tex. Crim. App. 1982)). We now consider whether Mills was harmed by that error. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g); *Swearingen v. State*, 270 S.W.3d 804, 808 (Tex. App.—Austin 2008, pet. ref'd). When, as here, error is preserved in the trial court by timely objection, the record must show only "some harm." *Almanza*, 686 S.W.2d at 171; *Swearingen*, 270 S.W.3d at 808. Here, if the jury had been properly instructed under article 38.23(a), it would have had the opportunity to find, based on Sherwood's testimony and the videotape, that Sherwood could not have seen, and did not see, Mills commit the traffic violation. As these were the sole facts here that could support reasonable suspicion for the traffic stop, the jury would then have been instructed to disregard all evidence obtained from the stop, including the cocaine that formed the basis for Mills's conviction. Thus, Mills suffered "some harm" from the charge error. *See Reynolds v. State*, 848 S.W.2d 148, 149 (Tex. Crim. App. 1993) (explaining how defendant was harmed from trial court's failure to properly instruct jury on article 38.23); *Vrba v. State*, 69 S.W.3d 713, 719 (Tex. App.—Waco 2002, no pet.)

---

whether Mills committed the traffic offense. However, the disputed fact issue that requires an article 38.23(a) instruction is not whether it turned out that Mills had actually committed the offense, but whether or not Officer Sherwood actually witnessed the traffic violation and the antecedent fact on which a reasonable inference of that fact's existence depends—that Sherwood could have seen whether or not Mills had signaled within one-hundred feet of the intersection. *Cf. City of Keller v. Wilson*, 168 S.W.3d 802, 812 (Tex. 2004) ("[I]f an eyewitness's location renders a clear view of an accident 'physically impossible,' it is no evidence of what occurred, even if the eyewitness thinks otherwise.") (quoting *Tex. & P. Ry. Co. v. Ball*, 75 S.W. 4, 6 (Tex. 1903)).

(concluding that defendant suffered some harm when record contained no evidence of defendant's guilt "independent of that obtained as a result of the stop").

Accordingly, we sustain Mills's first issue. This holding entitles Mills to the relief he seeks on appeal—because his conviction is based on the verdict of a jury that was not properly instructed under article 38.23, he is entitled to a new trial. *See Vrba*, 69 S.W.3d at 719, 725; *see also Stone v. State*, 703 S.W.2d 652, 655 (Tex. Crim. App. 1986) (reversing conviction and remanding for new trial when trial court failed to instruct jury on article 38.23). We thus need not reach Mills's alternative grounds for a new trial asserted in his other issues. *See* Tex. R. App. P. 47.1.

We reverse the judgment of conviction and remand this cause to the district court for a new trial.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Reversed and Remanded

Filed:   August 31, 2009

Publish