FILED IN
COURT OF CRIMINAL APPEALS

September 24, 2015

ABEL ACOSTA, CLERK

PD-0483-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 9/24/2015 8:55:13 AM
Accepted 9/24/2015 9:02:30 AM
ABEL ACOSTA
CLERK

No. PD-0483-15

IN THE COURT OF CRIMINAL APPEALS

OF THE STATE OF TEXAS

RUBEN TOTTEN, Appellant

v.

THE STATE OF TEXAS, Appellee

Appeal from Harris County

\* \* \* \* \*

**STATE'S BRIEF ON THE MERITS**

\* \* \* \* \*

LISA C. McMINN
State Prosecuting Attorney
Bar I.D. No.13803300

JOHN R. MESSINGER
Assistant State Prosecuting Attorney
Bar I.D. No. 24053705

P.O. Box 13046
Austin, Texas 78711
information@spa.texas.gov
512/463-1660 (Telephone)
512/463-5724 (Fax)

## NAMES OF ALL PARTIES TO THE TRIAL COURT'S JUDGMENT

*The parties to the trial court's judgment are the State of Texas and Appellant, Ruben Totten.

*The case was tried before the Honorable Brian Rains, visiting Judge of the 228th Judicial District Court, Harris County, Texas.

*Counsel for Appellant at trial was Jimmy Ortiz, 1924 Portsmouth St., Houston, Texas 77098.

*Counsel for Appellant on appeal was Sarah V. Wood, 1201 Franklin Street, 13th Floor, Houston, Texas 77002.

*Counsel for the State at trial was Lauren Clemons and Adam Brodrick, Assistant District Attorneys, 1201 Franklin Street, Suite 600, Houston, Texas 77002.

*Counsel for the State on appeal was the Honorable David Newell, former Assistant District Attorney, 1201 Franklin, Suite 600, Houston, Texas 77002.

*Counsel for the State before this Court is John R. Messinger, Assistant State Prosecuting Attorney, P.O. Box 13046, Austin, Texas 78711.

# TABLE OF CONTENTS

INDEX OF AUTHORITIES.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . 2

ISSUES PRESENTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      I.     **The record should be made to speak the truth.**. . . . . . . . . . . . . . 7

      II.    **There was insufficient evidence to justify a jury instruction on the lawfulness of the stop.**. . . . . . . . . . . . . . . . . . . . . . . . . . 9

      III.   **Appellant did not preserve his complaint on this fact issue.**. . . . 13

      IV.   **Proper review shows any error was harmless under any standard.**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

      V.     **Conclusion**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

PRAYER FOR RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

APPENDIX (Affidavit of Court Reporter)

# INDEX OF AUTHORITIES

**Cases**

*Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985) (r'hrng). . . . . . . . . . 13

*Amador v. State*, 221 S.W.3d 666 (Tex. Crim. App. 2007).. . . . . . . . . . . . . . . . 8

*Hamal v. State*, 390 S.W.3d 302 (Tex. Crim. App. 2012). . . . . . . . . . . . . . . . 10

*Heien v. North Carolina*, 135 S. Ct. 530 (2014).. . . . . . . . . . . . . . . . . . . . . . 11

*Hill v. California*, 401 U.S. 797 (1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Hill v. State*, 90 S.W.3d 308 (Tex. Crim. App. 2002).. . . . . . . . . . . . . . . . . . . 7

*Holmes v. State*, 248 S.W.3d 194 (Tex. Crim. App. 2008).. . . . . . . . . . . . . . . . 13

*Louis v. State*, 825 S.W.2d 752 (Tex. App.–Houston [14th Dist.] 1992,
    pet. ref'd).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Madden v. State*, 242 S.W.3d 504 (Tex. Crim. App. 2007). . . . . . . . . . . . 10, 13, 14

*Mills v. State*, 296 S.W.3d 843 (Tex. App.–Austin 2009, pet. ref'd). . . . . . . . 14-15

*Mount v. State*, 217 S.W.3d 716 (Tex. App.–Houston [14th Dist.] 2007,
    no pet.).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Orsag v. State*, 312 S.W.3d 105 (Tex. App.–Houston [14th Dist.] 2010,
    pet. ref'd).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-12

*Reeves v. State*, 420 S.W.3d 812 (Tex. Crim. App. 2013). . . . . . . . . . . . . . . . 15

*Robinson v. State*, 377 S.W.3d 712 (Tex. Crim. App. 2012).. . . . . . . . . . . . . . 11

*Routier v. State*, 112 S.W.3d 554 (Tex. Crim. App. 2003).. . . . . . . . . . . . . . . . 8

*Totten v. State*, 01-14-00189-CR, 2015 Tex. App. LEXIS 3144
    (Tex. App.–Houston [1st Dist.] Mar. 31, 2015). . . . . . . . . . . . . . . . . 10, 14

*Vannatta v. State*, 773 S.W.2d 771 (Tex. App.–Corpus Christi 1989, pet. dism. as improv. granted).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Wooten v. State*, 400 S.W.3d 601 (Tex. Crim. App. 2013).. . . . . . . . . . . . . . . . 15

**Statutes and Rules**
TEX. CODE CRIM. PROC. art. 38.23(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

TEX. R. APP. P. 2... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

TEX. R. APP. P. 3.1(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

TEX. R. APP. P. 34.6(d)... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

TEX. R. APP. P. 34.6(e)(3)... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**Other**
40 GEORGE E. DIX & ROBERT O. DAWSON, CRIMINAL PRACTICE AND PROCEDURE (2d ed. 2001).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

No. PD-0483-15

IN THE COURT OF CRIMINAL APPEALS

OF THE STATE OF TEXAS

RUBEN TOTTEN,                                                             Appellant

v.

THE STATE OF TEXAS,                                                      Appellee

\* \* \* \* \*

**STATE'S BRIEF ON THE MERITS**

\* \* \* \* \*

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

Comes now the State of Texas, by and through its State Prosecuting Attorney, and respectfully presents to this Court its brief on the merits.

## STATEMENT OF THE CASE

Appellant's conviction for possession of cocaine was reversed because the jury was not instructed to disregard the cocaine if it believed it was obtained in violation of the law as per TEX. CODE CRIM. PROC. art. 38.23(a).[1]

---

[1]    Article 38.23(a) reads, in full:
(a) No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

(continued...)

1

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument was not requested.

## ISSUES PRESENTED

1. **This case should be remanded because an error in the record invalidates the basis for the appeal.**

2. **Is the possibility that an officer detained the wrong vehicle, without more, determinative of the lawfulness of a detention such that an article 38.23 instruction is required?**

3. **Is an appellant who identifies no disputed fact issue at trial but raises multiple issues on appeal entitled to the "some harm" standard for preserved charge error?**

4. **Should the harm analysis for the failure to give an article 38.23 instruction assume the jury would have found in the defendant's favor, or is that the point of the analysis?**

## STATEMENT OF FACTS

Harold Trant is an undercover plainclothes police officer assigned to the narcotics division.[2]  On the date of the offense, he was conducting surveillance of a duplex complex from which he had purchased narcotics in the past.[3]  Trant saw

---

[1](...continued)
In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

[2]    3 RR 9.

[3]    3 RR 11.

appellant and another man pass in a green Ford Ranger and park at the complex.[4] Within the span of several minutes, one of the truck's occupants got out, walked out of Trant's view towards the duplex, and returned to the truck, which then left.[5] Although Trant could not see any illegal activity, he believed this was typical of a drug transaction.[6]

Trant agreed with defense counsel that he wanted to confirm his suspicions but did not have a legal reason to detain the vehicle when it passed him.[7] However, when the truck turned at a stop sign without signaling, he told nearby uniformed officers Kunkel and Betancourt to detain it.[8] Trant gave them a description of the vehicle, the reason for the stop, and its street and direction of travel.[9] Kunkel and Betancourt located a green Ford Ranger within a few seconds and detained it within four or five

---

[4]    3 RR 11-13.

[5]    3 RR 13, 39 (vehicle arrived and left within five to ten minutes). Trant could not tell which occupant went inside. 3 RR 36-37.

[6]    3 RR 37-39, 42-44.

[7]    3 RR 43-44.

[8]    3 RR 15-16.

[9]    3 RR 16, 59-60, 74.

blocks of the turn.[10] Appellant was in the truck.[11] That encounter led to discovery of crack cocaine in appellant's shoes.[12] Soon after the arrest, Trant spoke with appellant near the scene and seized the narcotics.[13]

Defense counsel challenged Trant's view of the stop sign,[14] his lack of knowledge of what transpired at the duplex,[15] and the lack of reason to detain the truck prior to the signal violation.[16] He also attacked Trant's and Kunkel's decisions not to include in the police report any reference to undercover surveillance or suspicion of narcotics activity.[17]

The testimony of Trant and Kunkel is consistent except for a single exchange in the midst of Trant's direct examination. Trant explained that he did not observe the detention or arrest because being seen with police would blow his cover but, based on what Kunkel and Betancourt told him "description-wise," "It *wasn't* the

---

[10]    3 RR 59-60, 74.

[11]    3 RR 61.

[12]    3 RR 67.

[13]    3 RR 12, 16-17, 68.

[14]    3 RR 22-36 (including photos and maps).

[15]    3 RR 36-39.

[16]    3 RR 41-43, 74-75.

[17]    3 RR 45-49, 79-83.

4

same vehicle."[18]  However, on cross-examination, Trant suggested the opposite:

Q:    And you testified to the jury that the vehicle that was ultimately stopped drove by you; is that correct?

A:    It did.[19]

After the trial court asked for objections to the charge, appellant made the following request:  "Ask for a 38.23 instruction, Judge."[20]  He repeated his request the following morning with the same level of specificity.[21]  Both requests were denied.[22]

During closing argument, defense counsel attacked the credibility of the officers based on the absence of information in their reports.  "The least we can expect is they be honest with us in their reports, in what happened out on the streets, as they say it happened."[23]  "That goes against their honesty.  It goes against their credibility."[24] Counsel then focused his credibility argument into an insinuation that Trant ordered the traffic stops based on unsubstantiated suspicion of narcotics

---

[18]    3 RR 16-18 (emphasis added).

[19]    3 RR 23.

[20]    3 RR 95.

[21]    4 RR 3 ("The only thing, once again, defense would reurge a 38.23 instruction.").

[22]    3 RR 95; 4 RR 3.

[23]    4 RR 5.

[24]    4 RR 9.

5

activity.[25]  "[B]ecause Officer Trant wanted that vehicle stopped, he needed a reason."[26]  "[W]e've got nothing other than Officer Trant saying the vehicle failed to use a turn signal."[27]  "Even if the driver, even if the passenger say they did [use a turn signal], so what?  It's an officer's word against any one of us.  How do you refute that?  How?"[28]  "The way this case went down from the beginning, ladies and gentlemen, was not right.  It was not honesty."[29]

## SUMMARY OF THE ARGUMENT

The court of appeals held that the single statement that the vehicle detained was not the vehicle observed by Trant raised a disputed issue of material fact that could have resulted in acquittal.  There is one factual and three legal problems with this conclusion.  First, the single statement in question was transcribed in error.  Once the record is made to speak the truth, the factual basis for reversal vanishes.  Second, assuming the record remains the same, the disputed fact issue is not material because it does not provide for reasonable mistakes and, regardless, there are insufficient facts

---

[25]  4 RR 10 ("And Officer Trant was going to have your vehicle pulled over because of the location itself.").

[26]  4 RR 12.

[27]  4 RR 10.

[28]  4 RR 12.

[29]  4 RR 13.

6

for a jury to make that determination. Third, appellant's bare request for an instruction did not preserve this issue, thus requiring egregious harm to reverse. Fourth, a harm analysis that consists entirely of acknowledging the possible effect of an article 38.23 instruction improperly presumes harm.

## **ARGUMENT**

### I. **The record should be made to speak the truth.**

Attached is an affidavit from the court reporter who, upon further review, swears that the central piece of testimony in this case—a single word—was transcribed in error. Regrettably, this mistake was not discovered until after the court of appeals issued its opinion. In the absence of any bad faith, however, no waste of judicial resources can compare to the reversal of a lawful conviction based on a typographical error.

In contrast to the case cited by appellant in his response to the State's petition, the issue is not one of supplementation of relevant material omitted from the record or the State's attempt to satisfy an evidentiary burden it failed to satisfy at trial.[30] Supplementation is covered by TEX. R. APP. P. 34.6(d). Instead, this is a matter of

---

[30] *See Hill v. State*, 90 S.W.3d 308, 314 (Tex. Crim. App. 2002) (State requested abatement to develop record of what happened during in-chambers conference in order to prove manifest necessity for a mistrial and attached an affidavit to its motion to abate).

7

alleged inaccuracy in the reporter's record that is covered by subsection (e).[31]

If a disputed inaccuracy "arises after the reporter's record has been filed in the appellate court, *that* court may submit the dispute to the trial court for resolution."[32] By the terms of Rule 34.6(e), that court "may" remand the dispute to the trial court or, impliedly, may resolve the dispute itself.[33] The issue in this case is whether this Court may decide or submit to the trial court, directly or through the court of appeals, a dispute that arose before the record was filed in this Court.[34]

The plain language of subsection (e) does not explicitly apply to the facts of this case but any other result would be absurd. If the State had failed to notice the

---

[31]    Appellant also cited, out of context, Judge Hervey's dissent to *Amador v. State*, 221 S.W.3d 666 (Tex. Crim. App. 2007), in which she said, "Rule 34.6(e) should not be applied to provide appellant with another opportunity to do what he should have done well before now . . . ." *Id*. at 680. In context, the dissent was chiding the majority for "suggest[ing] that the court of appeals could on remand abate the appeal for supplementation of the record with portions of the videotape under the procedures set out in Rule 34.6(e)." *Id*. She continued:
   But, Rule 34.6(e) sets out procedures for correcting inaccuracies in the reporter's record. There was nothing inaccurate in the reporter's record that appellant designated under Rule 34.6(b)(1) to be filed in the court of appeals. This record was merely incomplete and did not 'enable the appellate court to decide the point of error.'
*Id*. (citations omitted). In contrast, the claim in this case is that the record is complete but inaccurate.

[32]    TEX. R. APP. P. 34.6(e)(3) (emphasis added).

[33]    *Routier v. State*, 112 S.W.3d 554, 573 (Tex. Crim. App. 2003) ("There is no requirement [in Rule 34.6(e)(3)] that a hearing be held to correct the record after the record has been filed in the appellate court.").

[34]    The issue is purely one of timing, as this Court is an appellate court. *See* TEX. R. APP. P. 3.1(b) ("*Appellate court* means the courts of appeals, the Court of Criminal Appeals, and the Supreme Court.").

8

mistake or, worse, sat on it until the record was received in this Court and the remaining grounds were granted, it could avail itself of the rule. Only willful ignorance or gamesmanship would be encouraged by failing to apply Rule 34.6(e) in this case. This alone is good cause to suspend the rule's operation.[35]

At this point, appellant has only questioned the timeliness of the State's request and this Court's ability to address it. Notwithstanding the wording of Rule 34.6(e)(3), this Court is as qualified as any court of appeals to correct the record at this stage. If appellant disputes whether the record is inaccurate, the State is not opposed to a remand if this Court deems it necessary for the trial court to determine its court reporter's credibility. Otherwise, this Court should determine what the record should reflect and, if necessary, remand the case to the court of appeals to address appellant's claim based on an accurate record.

## II. There was insufficient evidence to justify a jury instruction on the lawfulness of the stop.

The court of appeals held that appellant was entitled to an article 38.23 jury instruction because whether the vehicles were the same would have determined the

---

[35] *See* TEX. R. APP. P. 2 ("On a party's motion or on its own initiative an appellate court may - to expedite a decision or for other good cause - suspend a rule's operation in a particular case and order a different procedure . . . .").

lawfulness of the stop.[36]  This Court has been strict about when an instruction is warranted, and the issue identified by the court of appeals falls short.

To be entitled to an article 38.23 instruction, three predicates must be met: (1) the evidence heard by the jury must raise an issue of fact, (2) the evidence on that fact must be affirmatively contested, and (3) the contested factual issue must be material to the lawfulness of the challenged conduct.[37]  The relevant requirement in this case is the materiality of the fact issue.  "The disputed fact must be an essential one in deciding the lawfulness of the challenged conduct."[38]  A fact is "material" when it is "necessarily determinative of the admissibility of the challenged evidence."[39]  In other words, if the fact issue does not resolve the legality of the officer's actions, no question is required.

The fact issue identified by the court of appeals—whether the vehicle was "the same"—does not, on its own, resolve the legality of the stop because it precludes

---

[36]  *Totten v. State*, 01-14-00189-CR, 2015 Tex. App. LEXIS 3144 at *14 (Tex. App.–Houston [1st Dist.] Mar. 31, 2015) (not designated for publication) ("The factual dispute about whether the vehicle that committed the traffic violation was the same one that was pulled over goes to the only legal justification proffered by the State for appellant's detention leading to his arrest for possession.").

[37]  *Hamal v. State*, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012).

[38]  *Madden v. State*, 242 S.W.3d 504, 511 (Tex. Crim. App. 2007).

[39]  40 GEORGE E. DIX & ROBERT O. DAWSON, CRIMINAL PRACTICE AND PROCEDURE § 4.194, at 284 (2d ed. 2001).

reasonable mistakes. As the text of the Fourth Amendment indicates and the Supreme Court has repeatedly affirmed, "the ultimate touchstone of the Fourth Amendment is reasonableness."[40] "To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials . . . ."[41] For example, the Fourth Amendment is not violated when officers mistakenly arrest an individual matching the suspect's description.[42] "This is so because a mistake about the facts, if reasonable, will not vitiate an officer's actions in hindsight so long as his actions were lawful under the facts as he reasonably, albeit mistakenly, perceived them to be."[43]

But even a properly worded instruction would have been unwarranted in this case because the record was not developed to enable the jury's consideration of reasonableness. Cases in which the lawfulness of the traffic stop depended upon whether the officer reasonably detained a vehicle based on a report illustrate the types of facts required to make that determination. In *Orsag v. State*, an officer stopped a blue Toyota pickup a few minutes and a short distance from where it was seen

---

[40]  *Heien v. North Carolina*, 135 S. Ct. 530, 536 (2014) (citations and internal quotations omitted).

[41]  *Id*.

[42]  *Hill v. California*, 401 U.S. 797, 802-05 (1971).

[43]  *Robinson v. State*, 377 S.W.3d 712, 720-21 (Tex. Crim. App. 2012).

11

speeding.[44] In *Mount v. State*, the officer stopped a light-colored Cadillac truck—he could not tell the exact color—because he received a call that a white Cadillac pickup truck possibly had been stolen in the area.[45] In *Louis v. State*, an officer stopped three black males in a light tan colored Cadillac based on a report that two black males were seen leaving a robbery in a white Oldsmobile.[46] In *Vannatta v. State*, an officer stopped a silver and blue Chevy Silverado pickup after a caller stated that someone driving a silver and blue Bronco was shooting at motorists.[47] In each case, the court of appeals held that the detention was reasonable under the totality of the circumstances—the similarities in make/model/color, temporal and physical proximity, etc.[48]

No one at trial developed a record of what the "wrong" vehicle looked like, how many other vehicles were on the road near that intersection, or any other factors that would be helpful to determining the reasonableness of the officers' mistake. Without some testimony, for example, that Kunkel and Betancourt pulled over a red

---

[44]   312 S.W.3d 105, 112 (Tex. App.–Houston [14th Dist.] 2010, pet. ref'd).

[45]   217 S.W.3d 716, 728 (Tex. App.–Houston [14th Dist.] 2007, no pet.).

[46]   825 S.W.2d 752, 755 (Tex. App.–Houston [14th Dist.] 1992, pet. ref'd).

[47]   773 S.W.2d 771, 774 (Tex. App.–Corpus Christi 1989, pet. dism. as improv. granted) (the Silverado's license plates matched those reported on the "Bronco").

[48]   *Orsag*, 312 S.W.3d at 113; *Mount*, 217 S.W.3d at 728-29; *Louis*, 825 S.W.2d at 755; *Vanatta*, 773 S.W.2d at 774.

Ford Ranger, or a green Volkswagen Beetle, any conclusion that the officers were unreasonable would have been a guess. Appellant was not entitled to an article 38.23 instruction on this issue.

## III. Appellant did not preserve his complaint on this fact issue.

Assuming there was a disputed issue of material fact fit for a jury instruction, the court of appeals erred by requiring only "some" harm because appellant did not preserve his complaint.[49] "The first requirement for obtaining a jury instruction under Article 38.23 is that the defendant requests an instruction on a specific historical fact or facts."[50] Appellant failed to do this. Because neither of his requests mentioned any fact in dispute, egregious harm should be required for reversal.[51]

In fairness, there may be cases in which the complained-of fact issue should have been apparent to the trial court. This is not such a case. Appellant filed a boilerplate motion to suppress that gives no insight into anticipated issues.[52] The focus of his cross-examination was on Trant's inability to see the alleged failure to

---

[49] *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (r'hrg) (defining different standards of requisite harm based on preservation).

[50] *Madden*, 242 S.W.3d at 511.

[51] *See Holmes v. State*, 248 S.W.3d 194, 202 n.32 (Tex. Crim. App. 2008) ("Appellant's proffered instruction was incorrect because it was an abstract instruction on the law and did not specify any disputed fact issues; therefore any error should have been analyzed under *Almanza*'s egregious harm standard.").

[52] 1 CR 39-41.

13

signal, with emphasis on the implication that the traffic violation was contrived so as to justify detention. If anything, appellant's nondescript requests for an article 38.23 instruction would have been assumed to refer to the violation, not any mistaken traffic stop. If nothing else, appellant's claim on appeal that the objections could refer to two distinct factual issues shows that it did not necessarily refer to either.[53]

Appellant should not benefit from the less-stringent "some harm" standard when he identified no issue at trial, raised two alternatives on appeal, and his trial examination pointed only to the one not addressed by the court of appeals. If his claim is to be reviewed, it should be for egregious harm.

## IV. Proper review shows any error was harmless under any standard.

The court of appeals held that some harm was shown because a favorable answer to the proposed instruction would have benefitted appellant.[54] But "[h]arm

---

[53] *See Totten*, 2015 Tex. App. LEXIS 3144 at *5 ("Specifically, he argues that the evidence raised a fact issue about whether Trant's allegedly witnessing a green Ford Ranger commit a traffic violation justified the traffic stop . . . . Appellant also claims that photographic evidence of the scene raises a fact issue about whether Trant could have seen the vehicle turn without signaling."); App. Br. at 11. On remand, the court of appeals will have to determine whether there is any evidence besides defense counsel's questioning that affirmatively contests Trant's ability to see appellant's failure to signal. *See Madden*, 242 S.W.3d at 513 ("a cross-examiner's questions do not create a conflict in the evidence, although the witnesses's answers to those questions might."). If so, it will also have to determine whether any mistake or malfeasance on Trant's part would invalidate Kunkel and Betancourt's reliance on a specific directive from a presumptively reliable source to justify the stop.

[54] *Totten*, 2015 Tex. App. LEXIS 3144 at *14-15. This is a common view. *See, e.g., Mills v. State*, 296 S.W.3d 843, 849 (Tex. App.–Austin 2009, pet. ref'd) ("As these were the sole facts here (continued...)

14

does not emanate from the mere failure to include the requested instruction."[55] Even the "some harm" standard "still requires the reviewing court to find that the defendant suffered some actual, rather than merely theoretical, harm from the error."[56] A reviewing court is required to consider: (1) the jury charge as a whole, (2) the arguments of counsel, (3) the entirety of the evidence, and (4) other relevant factors present in the record.[57] Had the court of appeals conducted a harm analysis, it would have found no possibility of even "some" actual harm.

Review of all the evidence shows why finding this type of error harmful *per se* is a mistake. The legality of the stop was a hotly contested issue, but not for the "fact" that Kunkel and Betancourt pulled over the wrong vehicle. Considering the argument that Trant orders detentions without any regard for their lawfulness and that Kunkel is complicit, it is noteworthy that Trant's "admission" did not even draw a comment. Not only did defense counsel not pounce on this statement, he asked Trant

---

[54](...continued)
that could support reasonable suspicion for the traffic stop, the jury would then have been instructed to disregard all evidence obtained from the stop, including the cocaine that formed the basis for Mills's conviction. Thus, Mills suffered 'some harm' from the charge error.").

[55]   *Wooten v. State*, 400 S.W.3d 601, 606 (Tex. Crim. App. 2013).

[56]   *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013) (internal quotations omitted).

[57]   *Id*.

to confirm that "the vehicle that was ultimately stopped drove by [him]."[58]

Even if Trant's lone statement on direct examination created a disputed fact issue, the remaining evidence shows it is undisputed that Trant saw appellant in the green Ford Ranger before it stopped at the duplex and that appellant was in the vehicle Kunkel and Betancourt detained at Trant's direction. It is also undisputed that Trant spoke to appellant after the arrest when he collected the narcotics obtained by Kunkel and Betancourt. That is not some bizarre coincidence. It is difficult to conceive how the jury could have given any weight to a single answer in light of the remaining cohesiveness of this short trial.

Assuming the record is correct, when viewed as a whole, "[i]t wasn't the same vehicle" looks more like a simple misstatement than it does a genuinely disputed, material fact issue the jury could have possibly decided in appellant's favor.

## V. Conclusion

All of the merits arguments in this case point to the conclusion that the reporter's record is inaccurate. Appellant did not make a record regarding the scope of the officers' mistake because there was no evidence of mistake. Appellant did not identify this mistake at the charge conference because there was no evidence of

---

[58]  3 RR 23. Nor did the prosecutor acknowledge the implications of a negative answer during examination or refer to it during closing arguments.

mistake. Appellant did not ever mention or argue to the jury that Kunkel and Betancourt were mistaken because there was no evidence of mistake. Whatever instructive value an opinion on the merits will have, the record should be corrected to reflect the evidence the jury heard and upon which appellant was convicted.

## PRAYER FOR RELIEF

WHEREFORE, the State of Texas prays that the Court of Criminal Appeals reverse the judgment of the Court of Appeals.

Respectfully submitted,

/s/ John R. Messinger
JOHN R. MESSINGER
Assistant State Prosecuting Attorney
Bar I.D. No. 24053705

P.O. Box 13046
Austin, Texas 78711
information@spa.texas.gov
512/463-1660 (Telephone)
512/463-5724 (Fax)

17

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that according to the WordPerfect word count tool this document contains 4,738 words.

/s/ John R. Messinger
John R. Messinger
Assistant State Prosecuting Attorney

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 25th day of September, 2015, a true and correct copy of the State's Brief on the Merits has eFiled or e-mailed to the following:

Alan Curry
Chief, Appellate Division, Harris County District Attorney's Office
1201 Franklin, Suite 600
Houston, Texas 77002
CURRY_ALAN@dao.hctx.net

Sarah V. Wood
1201 Franklin Street, 13th Floor
Houston, Texas 77002
Sarah.Wood@pdo.hctx.net

/s/ John R. Messinger
John R. Messinger
Assistant State Prosecuting Attorney

**APPENDIX**

RECEIVED
MAY 15 2015
STATE PROSECUTING ATTORNEY

CAUSE NO. 1365961

COURT OF APPEALS NO. 01-14-00189-CR

RUBEN TOTTEN                                 IN THE 228TH DISTRICT COURT

VS.                                          OF

THE STATE OF TEXAS                           HARRIS COUNTY, T E X A S

AFFIDAVIT

I, Julia E. Johnson, deputy court reporter for the 228th District Court, am making a correction to the Official Reporter's Record in the above styled and numbered cause.

During the jury trial, on February 24, 2014, in Volume # 3 of 5, Page No. 17, lines 7 through 9, on Direct Examination of Harold Trant by Assistant District Attorney, Lauren Clemons, the record currently reflects the following:

"Q     Did you notice if it was the same vehicle that they --

A     It wasn't the same vehicle."

After listening to the audio, I have confirmed that I made an error in transcribing the answer, and it should be corrected to state:

"A     It was the same vehicle."

Sworn to by _Sally M Pankhurst_, Notary Public, on this 12th day of May, 2015.

_Julia E. Johnson_
Julia E. Johnson, CSR #3170

SALLY M PANKHURST
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
FEB. 7, 2017