**Opinion issued January 29, 2019**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-14-00189-CR

_____

**RUBEN TOTTEN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 228th District Court**
**Harris County, Texas**
**Trial Court Case No. 1365961**

---

# O P I N I O N

A jury convicted appellant, Ruben Totten, of possession of between one and

four grams of a controlled substance, found two enhancements true, and assessed his

punishment at 25 years' confinement. In a single issue on appeal, appellant contends the trial court erred by refusing his requested Article 38.23 jury charge.[1]

## BACKGROUND

This case was previously decided by this Court on March 31, 2015. *See Totten v. State*, No. 01-14-00189-CR, 2015 WL 1501799 (Tex. App.—Houston [1st Dist.] Mar. 31, 2015) (not designated for publication) (hereafter, "Totten 1"). The Court of Criminal Appeals reversed and remanded the case to this Court. *See Totten v. State*, No. PD.-0483-15, 2016 WL 5118331 (Tex. Crim. App. Sept. 21, 2016) (not designated for publication) (hereafter, "Totten 2").

### *Background Facts*

The facts relevant to the disposition of this appeal are set forth in the Court of Criminal Appeals' opinion as follows:

> In October 2012, Houston Police Department Officer Trant, while sitting in an unmarked car, surveilled a duplex known for narcotics activity. While watching the duplex, Trant saw a green Ford Ranger drive past him and pull into the duplex's parking lot. Two men got out of the vehicle. One opened the Ranger's hood and appeared to be examining the engine. The other walked toward the duplex. After a short time, the man returned from the duplex and got into the Ranger.

---

[1]     *See* TEX. CODE CRIM. PROC. ANN. art. 38.23 (providing that "where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt that the evidence was obtained in violation of the provisions of this Article, then and in in such event, the jury shall disregard any such evidence so obtained").

They both drove off. As the Ranger left the location, the driver failed to use the turn signal as it turned from Brownsville on to Frankie Street. Instead of attempting to pull the Ranger over for the traffic violation, Trant notified Officers Kunkel and Betancourt, who were driving a marked patrol unit, about the traffic violation he saw. Trant described the vehicle to Kunkel and Betancourt as a green Ford Ranger.

* * * *

Kunkel confirmed that Trant notified the officers that he observed a green Ford Ranger turn without using a turn signal and provided the direction the Ranger was traveling. Although he did not recall being given a license-plate number, Kunkel identified the vehicle within a few seconds, and he and Officer Betancourt pulled over a green Ford Ranger. Kunkel approached the passenger side window where Totten was sitting. When asked if he had anything illegal on his person, Totten responded that he had a switchblade knife. Kunkel placed Totten in handcuffs for possession of a prohibited weapon and, searching Totten incident to the arrest, found crack cocaine in Totten's shoe.

*Id*. at *1.

### *This Court's Previous Opinion and the Court of Criminal Appeals's Opinion*

On original submission of this case, appellant argued that he was entitled to a jury instruction under Article 38.23 for two reasons: (1) that there was a fact question about whether the green truck Kunkle and Betancourt detained was the same green truck that Trant had seen turn without signaling and (2) that there was a fact question about whether Trant was in a position to even see the green truck turn without signaling. *Totten 1*, 2015 WL 1501799 at *2. This Court ruled in appellant's favor on his first reason, holding that appellant should have received an Article 38.23 instruction because there was a fact question about whether the green truck stopped

3

by Kunkle and Betancourt was the same green truck that Trant had seen turn without signaling. *Id.* at *4.

The Court of Criminal Appeals agreed that there was a fact question about whether Kunkle and Betancourt pulled over the same green truck that Trant saw turn without signaling, *Totten 2*, 2016 WL 5118331 at *2, but concluded that the fact issue was irrelevant because "a mistake about the facts, *if* reasonable, will not vitiate an officer's actions in hindsight so long as his actions were lawful under the facts as he reasonably, albeit mistakenly, perceived them to be." *Id.* However, the Court of Criminal Appeals remanded the case to this Court because we "did not address Totten's alternative argument in support of his jury-charge claim" and instructed us "to determine . . . whether a material factual dispute existed that required an Article 38.23 instruction." *Id.* at *3.

On remand, the parties filed amended briefs, addressing appellant's alternative argument that there was a fact question about whether Officer Trant was in a position to have seen whether appellant signaled before turning.

## ARTICLE 38.23 INSTRUCTION

In his sole issue on remand, appellant contends as follows:

> The defense offered photographs and maps challenging Officer Trant's ability to observe the traffic violation he claimed to have witnessed. The trial court refused the request to instruct the jury under Article 38.23. Did the trial court commit reversible error by refusing to give a requested jury instruction under Article 38.23?

4

*Applicable Law*

Article 38.23 provides:

> (a) No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

> (b) In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

TEX. CODE CRIM. PROC. ANN. art. 38.23(a).

Noting that the "terms of the statute are mandatory," the Court of Criminal Appeals has held that "when an issue of fact is raised, a defendant has a statutory right to have the jury charged accordingly." *Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007).

A defendant must meet three requirements for the trial court to submit an instruction pursuant to Article 38.23: "(1) the evidence heard by the jury must raise an issue of fact; (2) the evidence on that fact must be affirmatively contested; and (3) the contested factual issue must be material to the lawfulness of the challenged conduct." *Oursbourn v. State*, 259 S.W.3d 159, 177 (Tex. Crim. App. 2008) (citing *Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007)). The evidence

5

raising a fact issue "may be strong, weak, contradicted, unimpeached, or unbelievable." *Mendoza v. State*, 88 S.W.3d 236, 239 (Tex. Crim. App. 2002).

In *Madden v. State,* the Court of Criminal Appeals provided the following explanation about the type of conflicting, affirmative evidence requiring an Article 38.23 jury instruction:

> To raise a disputed fact issue warranting an Article 38.23(a) jury instruction, there must be some affirmative evidence that puts the existence of that fact into question. In this context, a cross-examiner's questions do not create a conflict in the evidence, although the witnesses's answers to those questions might.
>
> Here, for example, one issue was whether appellant exceeded the speed limit of 55 m.p.h. through a construction site, giving Officer Lily a reasonable suspicion to stop him. If Officer Lily testifies that appellant did speed and Witness Two (or appellant) testifies that he did not speed, this disputed factual issue must be submitted to the jury. If the jury finds that appellant did obey the speed limit and that Officer Lily was unreasonable in believing that he did not, then they may not consider the evidence obtained as a result of this unlawful detention. If, however, Officer Lily says that appellant did speed, and Witness Two (or appellant) says that he doesn't remember or doesn't know, there is no disputed fact to submit because there is no affirmative evidence of a factual conflict. Similarly, if Officer Lily testifies that appellant did speed, but the cross-examiner grills him, "Isn't it true that he really did obey the speed limit, you're wrong or you're lying?" there is no factual dispute unless Officer Lily admits, "Yes, that is true." The cross-examiner cannot create a factual dispute for purposes of an Article 38.23(a) instruction merely by his questions. It is only the answers that are evidence and may create a dispute. Even the most vigorous cross-examination implying that Officer Lily is the Cretan Liar does not raise a disputed issue. There must be some affirmative evidence of "did not speed" in the record before there is a disputed fact issue. Because there was such evidence in this record, the trial judge properly gave a jury instruction on this disputed fact.

242 S.W.3d at 513–14 (footnotes omitted).

Here, the only pieces of evidence relevant to appellant's alleged failure to properly signal were Trant's testimony and the photographs and maps admitted during his testimony. *See Oursbourn*, 259 S.W.3d at 177 ("This factual dispute can be raised only by affirmative evidence, not by mere cross-examination questions or argument."). Thus, the issue before this Court is whether the photographs and maps affirmatively contested Trant's testimony about appellant's failure to properly signal as it relates to the lawfulness of the subsequent traffic stop.

*Analysis*

Appellant relies on *Mills v. State*, 296 S.W.3d 843, 849 (Tex. App.—Austin 2009, pet. ref'd), to argue that the photographs and maps admitted at trial challenged "Trant's ability to observe the traffic violation he claimed to have witnessed[,]" and that "there is a question as to whether Officer Trant could have seen what he testified to."

In *Mills*, the defendant activated his blinker before turning, but the arresting officer testified that the defendant did not activate the blinker within 100 feet of the intersection, as required by law. *Id.* at 846. The officer stopped the defendant based on the traffic violation, and a subsequent search revealed illegal drugs. *Id.* The defendant argued that a video of the stop raised a fact issue regarding whether the police officer was in a position to see the defendant's blinker for 100 feet before it

7

reached the intersection. *Id.* at 846–47. In concluding that Mills should have been given a requested Article 38.23 instruction, the Austin Court of Appeals noted that the officer's responses on cross-examination and the video were sufficient to raise a fact question about the officer's ability to have seen the alleged traffic offense. *Id.* at 848–49. Specifically, the court noted that, on cross-examination, defense counsel elicited testimony from the officer about his location relative to the defendant's vehicle and obstacles that could have blocked his line of sight. *Id.* at 847. The court also noted that the video of the arrest "contained various potential obstacles to [the officer's] line of sight," and that on the videotape a "building or trailer blocks one's view of Market Street behind it until the patrol car passes to the left of the building and almost immediately turns right onto Market Street," and that "Mill's car appears to come into view when [the officer] passes the portable building and immediately turns right." *Id.* at 846.

In this case, there is no videotape of the arrest; the only exhibits are maps and photographs[2] of the location at which Trant testified that he observed appellant turn

---

[2]   Appellant's brief contains photographs and maps that have been altered from those admitted at trial, presumably in an attempt to "clarify" Officer Trant's testimony about the exhibits. These modifications are not part of the appellant record because they were not admitted at trial in this condition. *See* TEX. R. APP. 34.6(a)(1), (g). In addition, the alterations are misleading. For example, appellant's altered version of Defendant's Exhibit 1 purports to show that Officer Trant was parked at the intersection of Brown and Hollywood Street. However, according to the scale provided at the bottom of the map, that would have been almost 1000 feet (333 yards) from the intersection where the alleged offense occurred, but both parties agree that Trant was only 300 feet (100 yards) from the intersection. The 100-yard

8

right without signaling. Because appellant's cross-examination of Trant cannot raise a fact question, we look to his answers to those questions and the exhibits admitted at trial to determine whether a fact question was raised regarding Trant's ability to have seen the failure-to-signal traffic offense.

Trant testified that he was observing the intersection of Frankie and Brownsville Streets from his location approximately 100 yards (300 feet) down Brownsville Street. He was not using binoculars. Trant admitted that he could see less than half of the duplex that he had under surveillance near that intersection, but he was able to see the green truck when it left the duplex and stopped at the stop sign. At that point, he noticed that the truck did not signal before turning right. When the truck actually turned right, it went out of his view. Trant testified that it was around 4:45 p.m. when he observed the traffic offense and that it was still daylight. He was not questioned about, nor did he mention, any obstructions between his vantage point and the intersection at which he observed appellant's failure to signal. Likewise, Defendant's Exhibits 1 through 8 show no obstructions. Defendant's Exhibit 5 is an aerial view that shows Frankie Street running horizontally at the top

distance testified to by Trant would put his position near Brownsville and Beacon Streets, which, in fact, corresponds more closely with a mark made on Defendant's Exhibit 1 as it was admitted at trial and Trant's testimony about his location. Indeed, Trant testified that he had pulled off the side of the road on Brownsville Street between Beacon and Frankie Streets. Thus, this Court will consider only the actual exhibits admitted at trial and will disregard the altered versions of the exhibits in appellant's brief.

and Brownsville Street running vertically. The duplex complex under surveillance is at the top on the left of the photograph, and a dot marks Trant's location further down Brownsville on the right side of the street. There are no visible obstructions between that location and the intersection of Brownsville and Frankie Streets. And, Defendant's exhibit 8 is a photograph taken from the intersection of Frankie and Brownsville Streets, shows the entrance to the duplex complex under surveillance on the right and the stop sign at which appellant failed to signal on the left. According to his testimony, Trant was located located approximately 100 yards further down Brownsville on the same side as the street as the stop sign. Defendant's exhibit 8 also shows no obstructions to Trant's line of sight.

Because the testimony and photographs in this case do not raise an issue as to whether Trant's view of the intersection was obstructed, this case is distinguishable from *Mills*. Indeed, it is more like *Pryor v. State*, No. 03-13-00347-CR, 2015 WL 2066228 (Tex. App.—Austin May 1, 2015, pet. ref'd), in which the Austin Court of Appeals distinguished its opinion in *Mills* because, unlike in *Mills*, "there was no such equivocation [regarding obstructions] in the officer's testimony." *Id.* at *2 fn.1.

There being no fact issue raised about Officer Trant's ability to see appellant's failure to signal, the trial court did not err in refusing appellant's request for a 38.23 jury instruction.

## CONCLUSION

We overrule appellant's sole issue on remand and affirm the trial court's judgment.


                                    Sherry Radack
                                    Chief Justice


Panel consists of Chief Justice Radack and Justices Goodman and Countiss.

Publish.   TEX. R. APP. P. 47.2(b).